# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

CHRISTINE OLDENBURG-McGEE, an individual, individually and on behalf of similarly-situated persons and entities,

    Plaintiffs,

v.

REGENTS OF THE UNIVERSITY OF MICHIGAN; THE UNIVERSITY OF MICHIGAN, MICHIGAN MEDICINE; THE UNIVERSITY OF MICHIGAN MEDICAL SCHOOL; DR. DAVID MILLER, MD, MPH, individually in his personal and professional capacity; JOVITA THOMAS-WILLIAMS, individually in her personal and professional capacity; and HAKIM BERRY, individually in his personal and professional capacity,

    Defendants.

Case No. 2025-cv-

Hon.

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

---

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (P87221)
SALVATORE PRESCOTT PORTER
& PORTER, PLLC
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
prescott@spplaw.com
smith-morris@spplaw.com
*Attorneys for Plaintiffs*

Individual and Representative Plaintiff CHRISTINE OLDENBURG-McGEE, by and through her attorneys, SALVATORE PRESCOTT PORTER & PORTER, brings this Complaint on behalf of herself and all other similarly situated Class members for sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2 and the Equal Pay Act, 29 U.S.C. § 206(d).

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff Christine Oldenburg-McGee ("Plaintiff" or "Plaintiff Oldenburg-McGee") is an individual who resides and works in Ann Arbor, Michigan.

2. Plaintiff is a Physician Assistant ("PA") working at Defendant the University of Michigan, Michigan Medicine ("UMMM") throughout the statutory periods at issue here.

3. Plaintiff brings this action on behalf of herself and on behalf of the class of PAs who are female and who have been employed at UMMM at any point since three years before the date of filing herein ("the Class"), pursuant to Fed. R. Civ. P. 23(a), (b)(1), (b)(2), and (b)(3). Plaintiffs reserve the right to amend the definitions of the Class based on discovery or legal developments.

4. Plaintiff seeks relief for herself and for all other members of the Class.

5. Defendant Regents of the University of Michigan ("Regents") are the

2

body corporate of the University of Michigan ("UM"), a Michigan public university, with a principal place of operation in Ann Arbor, Michigan, which is found in the Eastern District of Michigan.

6. Defendant the University of Michigan, Michigan Medicine (also known as "UMMM") is operated by the body corporate of UM, a Michigan public University, with a principal place of operation in Ann Arbor, Michigan.

7. Defendant the University of Michigan Medical School ("UMMS"), is operated by the body corporate of UM, a Michigan public University, with a principal place of operation in Ann Arbor, Michigan.

8. Defendant Dr. David Miller, MD, MPH ("Defendant Miller") is an individual who is or was employed by UM Defendants and works in Ann Arbor, Michigan.

9. Defendant Miller was the executive who exercised policymaking oversight and managerial control over Defendant UMMM at times relevant, together with the Defendant Regents.

10. Defendant Jovita Thomas-Williams ("Defendant Thomas-Williams") is an individual who is employed by UM Defendants and works in Ann Arbor, Michigan.

3

11. Defendant Thomas-Williams exercised policymaking oversight and managerial control over Defendant UMMM at times relevant, together with the Defendant Regents, including specifically related to the Class and its pay.

12. Defendant Hakim Berry ("Defendant Berry") is an individual who is employed by UM Defendants and works in Ann Arbor, Michigan.

13. Defendant Berry exercised policymaking oversight and managerial control over Defendant UMMM at times relevant, together with the Defendant Regents, including specifically related to the Class and its pay.

14. Defendants Miller, Thomas-Williams, and Berry (collectively "Individual Defendants") are sued in their individual and official capacities.

15. The alleged actions forming the basis of Plaintiffs' claims occurred in Ann Arbor, Michigan.

16. Claims in this action are for intentional and/or disparate impact sex discrimination in violation of Title VII, 42 U.S.C. § 2000e-2 and the Equal Pay Act, 29 U.S.C. § 206(d).

17. This Court has original jurisdiction over Plaintiff's federal claims under 29 U.S.C. § 626, 28 U.S.C. § 1343, and 28 U.S.C. § 1331.

18. Pursuant to 28 U.S.C. § 1391(b), venue lies in the Eastern District of Michigan, because the events giving rise to this action occurred in Ann Arbor, Michigan.

## FACTS

19.  Defendant UMMM holds itself out as "one of the largest health care complexes in the world and has been the site of many groundbreaking medical and technological advancements since the opening of the U-M Medical School in 1850."

20.  Defendant UMMM employs over 30,000 individuals. Of those, approximately 450 are PAs.

21.  Plaintiff Oldenburg-McGee and all Class members are currently, or were during their tenures with Defendant UMMM, licensed to practice as PAs in the State of Michigan, certified by the National Commission on Certification for Physician Assistants (NCCPA), graduates of a PA program accredited by Accreditation Review Commission on Education for the Physician Assistant (ARC-PA) or one of its predecessor agencies, and in possession of State of Michigan Controlled Substance and DEA licenses.

22.  All Class members were therefore qualified to give and did give satisfactory service at all times relevant.

23.  Contrary to law, Class members were paid on average $9,000/year less in salary than comparable/similarly situated male PAs.

24.  Plaintiff Oldenburg-McGee served as an elected leader of a bargaining unit known as United Physician Assistants of Michigan Medicine ("UPAMM").

5

25. In this capacity, Plaintiff Oldenburg-McGee advocated for closing the gender wage gap to the named Defendants.

26. However, in 2021 the UM Defendants and UPAMM instead negotiated a contract that did not close the wage gap, but rather entrenched it further.

27. For example, when a contract with a seemingly objective pay scale is put in place, placement on that scale is all-important. While subsequent steps up the scale may be lock step or generally and fairly applied, placement itself can lock in pre-existing wage disparities.

28. Through the present, Plaintiff Oldenburg-McGee has continued to advocate for closing the wage gap between female and male PAs.

29. Among other things, Plaintiff Oldenburg-McGee shared detailed information with Defendants, including the Individual Defendants (at times by and through agents), indicating that the gender wage gap was an ongoing problem.

30. Despite the Defendants' knowledge of the gender wage gap, and despite expressions of intentions to address the disparity, the Defendants have for years failed and refused to correct for it.

31. Defendants' conduct is willful and intentional.

32. As a result, Plaintiff and the Class have suffered substantial financial loss, as well as, among other things, embarrassment, frustration, and stress.

33. On April 3, 2025, Plaintiff Oldenburg-McGee filed a discrimination charge with the Equal Employment Opportunity Commission ("EEOC"), for which the EEOC issued a right to sue notice on April 10, 2025.

34. Plaintiff Oldenburg-McGee timely filed this action thereafter.

## COUNT I
### UNEQUAL PAY
### EQUAL PAY ACT (EPA), 29 U.S.C. § 206(d), *et seq.*
### (on behalf of Plaintiff and the Class)

35. Plaintiffs incorporate here all previously stated allegations.

36. This Claim is brought by Plaintiff Oldenburg-McGee on behalf of herself and the Class she seeks to represent.

37. To "employ" within the meaning of the EPA, includes "to suffer or permit to work." 29 U.S.C. § 203(g).

38. The UM Defendants are an "employer," and Plaintiffs are or were UM Defendants' "employees," within the meaning of the EPA, 29 U.S.C. §§ 203, 206(d). That is, UM suffered and permitted the Class to work for it.

39. Pursuant to the EPA, no employer "shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which employer pays wages to employees of the opposite sex in such establishment for equal work on jobs." 29 U.S.C. § 206(d).

40. In contravention of the EPA, the UM Defendants paid the Class members less than the rate of pay of their male peers, whose work was the same or substantially similar in skill, effort, responsibility and working conditions.

41. Defendants' pay practices were willful and unresolved even after Plaintiff complained and escalated facts showing gendered pay disparities.

42. Defendants' actions have caused and continue to cause all Class members substantial losses in salary and related employment benefits.

## COUNT II
## DISPARATE IMPACT SEX DISCRIMINATION
## TITLE VII, 42 U.S.C. § 2000e-2, *et seq.*
### (on behalf of Plaintiff and the Class)

43. Plaintiffs incorporate here all previously stated allegations.

44. The UM Defendants employ the Class members in an industry affecting commerce and they have fifteen or more employees. As such they are an "employer" within the meaning of Title VII.

45. Plaintiffs are or were "employees" employed by the UM Defendants. Specifically, they worked to treat patients at UM health facilities.

46. Plaintiffs are members of a protected class, being female.

47. Plaintiffs are PAs who were qualified for their jobs. For example, they were hired, supervised, evaluated, and trained according to UM's standards.

48. Defendants maintained facially neutral policies and practices that disparately impacted the Plaintiffs.

49. Specifically, these included the practice of placing Class members on lower pay tiers at the time of hire than similarly situated male peers were placed on at the time of their hire, denying pay raises on terms commensurate with similar males, limiting opportunities for Class members to transfer or cross train, and disparate placement onto steps or tiers on pay scales after hire when scales were migrated from former to current systems.

50. While gender was not an explicit factor cited in these policies or practices, the result of these practices and policies has been and continues to be that female PAs are systematically paid less than similar males. The difference is statistically significant.

51. There is no business necessity for paying the Class members less, on average, than their male peers.

## COUNT III
## DISPARATE TREATMENT SEX DISCRIMINATION
## TITLE VII, 42 U.S.C. § 2000e-2, *et seq.*
### (on behalf of Plaintiff and the Class)

52. Plaintiffs incorporate here all previously stated allegations.

53. Plaintiffs were consistently paid substantially less compensation than similarly-situated male PAs, who are, like Plaintiffs, specialists in their field, were subject to the same management and standards (except as they were disparately applied to Plaintiffs), and were engaged in the same work in all relevant respects,

including the provision of specialty medical services.

54. Gender was a factor that made a difference in Plaintiffs being paid less money than male peers who performed work that was the same or substantially similar in skill, effort, responsibility, and working conditions.

55. Defendants' actions have caused and continue to cause Plaintiffs and all Class members substantial losses in earnings and other employment benefits.

56. In addition, Representative Plaintiff and the Class suffer and continue to suffer embarrassment, loss of reputation, and emotional distress in an amount according to proof.

## CLASS ACTION ALLEGATIONS

57. Plaintiff is a PA currently working at Defendant UMMM, and who has worked throughout the time periods at issue here.

58. Plaintiff brings this action on behalf of herself and on behalf of the Class of PAs who are female and who have been employed at Defendant UMMM since three years before the date of filing herein, and continuing to the present ("the Class"), pursuant to Fed. R. Civ. P. 23. Plaintiffs reserve the right to amend the definitions of the Class based on discovery or legal developments.

59. Plaintiff is a member of the Class she seeks to represent.

60. The number of female PAs who have been paid by the University in the past three years exceeds three hundred.

61. This group is sufficiently numerous to make class action status the most practical method for Plaintiffs to challenge the policies and practices of Defendants that result in their underpayment.

62. There are questions of law and fact raised by the named Plaintiff's claims common to, and typical of, those raised by the Class she seeks to represent.

63. Questions of law or fact common to the Class, without limitation, include:

    a. What the female Class members have been paid;

    b. What their male peers have been paid;

    c. Whether disparities between male and female pay are intentional and because of sex;

    d. Whether the UM Defendants were on notice of a gendered pay disparity for years and knowingly perpetuated it, with facts sufficient to support punitive and/or liquidated damages;

    e. Whether the disparity between male and female pay is the result of a facially neutral policy or practice that imposes a disparate impact on the Class, regardless of the intentions of the policy.

64. Data on pay is publicly available at https://www.umsalary.info.

65. Data collected by Plaintiff and her legal team reflect, as to the issues identified above:

      a. & b. During the years of data available within the statutory period, female PAs were paid approximately $9,000 per year less on average than similar male PAs (**solely** tallying salary and not including additional benefits that are based on salary). This finding is mathematically verifiable and controls for potentially confounding variables.

      c. & d. The disparity in pay identified herein has been the subject of concerns escalated by Ms. Oldenburg-McGee to the named Defendants for years. Knowingly tolerating this disparity and/or refusing to address it is intentional and sex based.

      e. The University's pay practices, such as placement of PAs onto pay schedules or steps, are practices or policies that have resulted in lesser pay for equal work by class members compared to male peers. Whether intentional or not, the result is that women are making materially less per hour than similar male peers based on the University's own data.

66. The violations of law and resulting harms alleged by the named Plaintiff are typical of the legal violations and harms suffered by all Class members.

67. The Representative Plaintiff's claims are typical of the claims of the Class.

68. As the Class Representative, Plaintiff Oldenburg-McGee will fairly and adequately protect the interests of the Plaintiff Class members.

69. Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiff and the Class as a whole.

70. The Class members are entitled to relief to end Defendants' common, uniform, unfair, and discriminatory policies and practices.

71. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual members of the Class, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation. The Class members have been damaged and are entitled to recovery as a result of Defendants' common, uniform, unfair, and discriminatory policies and practices. Defendants have or should have computerized account, payroll, and personnel data that will make calculation of damages for specific Class members relatively simple. The propriety and amount of punitive damages are based on the conduct of the Defendants, making these issues common to the Class.

72. Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(1), because the prosecution of separate actions by individual members of the

Class could result in inconsistent or varying adjudications with respect to individual members of the Class that would establish incompatible standards of conduct for the UM Defendants or that would be dispositive of the interests of some non-party members and would impair their ability to protect their interests. For example, various courts could issue verdicts with different declaratory or injunctive relief that would be impossible for the UM Defendants to implement simultaneously. Or, one court could find liability, while another dismissed the case.

73. Plaintiffs' counsel know of no conflicts of interest between the Class Representative and absent Class members with respect to the matters at issue in this litigation; the Class Representative will vigorously prosecute the suit on behalf of the Class; and the Class Representative is represented by experienced counsel.

74. Plaintiffs are represented by attorneys with experience and expertise in class action litigation in this Court specifically and who are recognized experts in the field of employment law.

75. Plaintiffs' attorneys have identified and thoroughly investigated all claims in this action and have committed sufficient resources to represent the Class.

76. The maintenance of the action as a class action is superior to other available methods of adjudication and will promote the convenient administration of justice. Specifically, each individual absent Class member would find it prohibitively

expensive to litigate her loss, on average $9,000 per year of full time work during the statutory period.

77. Defendants have acted or failed to act on grounds generally applicable to all Plaintiffs.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff and the Class seek all available relief against Defendants, including:

a. certification of the case as a class action on behalf of the proposed Class;

b. designation of Representative Plaintiff Oldenburg-McGee as representative of the Class;

c. designation of Representative Plaintiff's counsel of record as Class counsel;

d. declaratory relief finding that Defendants violated the Title VII, 42 U.S.C. § 2000e-2, and the Equal Pay Act, 29 U.S.C. § 206(d);

e. compensatory damages for economic and non-economic loss;

f. liquidated damages;

g. back pay (including interest and benefits) for Plaintiff Oldenburg-McGee and Class members;

h. all damages sustained as a result of Defendants' conduct, including

        damages for emotional distress, humiliation, embarrassment, and anguish, according to proof;

i. exemplary/punitive damages to deter future unlawful conduct;

j. costs incurred herein, including reasonable attorneys' fees to the extent allowable by law;

k. pre-judgment and post-judgment interest, as provided by law; and

l. all other appropriate legal and equitable relief this Court deems just and proper.

Respectfully submitted,
SALVATORE PRESCOTT PORTER
& PORTER, PLLC

Dated: May 2, 2025        /s/ Sarah S. Prescott

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (P87221)
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
prescott@sppplaw.com
smith-morris@sppplaw.com

*Attorneys for Plaintiffs*

**JURY DEMAND**

Plaintiff, individually and on behalf of the Class, hereby demands a trial by jury in the above-captioned matter.

Dated:  May 2, 2025

Respectfully submitted,
SALVATORE PRESCOTT PORTER
& PORTER, PLLC

/s/ Sarah S. Prescott

Sarah S. Prescott (P70510)
Annemarie Smith-Morris (P87221)
105 E. Main Street
Northville, Michigan 48167
(248) 679-8711
prescott@sppplaw.com
smith-morris@sppplaw.com

*Attorneys for Plaintiffs*